[Civ. No. 3800.   Fourth Dist.   Mar. 1, 1950.]

F. D. RAKOW, Respondent, v. THE INNES COMPANY (a Corporation), Appellant.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Bennett Siemon for Appellant.

Calvin H. Conron, Jr., for Respondent.

MUSSELL, J.—Defendant appeals from a judgment in favor of plaintiff in a action to recover advance rental paid on a "potato harvester." ·

Plaintiff, who had farming interests in the Edison area in Kern County, was approached by Mr. Innes, the president of defendant company, in the fall of 1944, and a conversation took place between them in which Mr. Innes stated that he was manufacturing or going to manufacture a potato harvester which would pick potatoes from the ground, elevate them into a truck, and, therefore, eliminate hand picking. Plaintiff stated that he would be very much interested in such a machine. Soil conditions were discussed and Mr. Innes, upon being asked if he was building a machine that would operate in all types of soil, stated that that would have to be so or the machine would be valueless otherwise. In January of 1945, Mr. Innes again called upon plaintiff and stated that he wanted to build a machine to harvest potatoes; that they were to allocate one to plaintiff and others to different people in the Edison district. He asked plaintiff if he were willing to advance $2,000 to the Innes Company as a rental on this equipment when it was perfected and delivered for use. Plaintiff stated that he would be "willing to do that" and on January 11, 1945, plaintiff entered into a written contract with the defendant wherein the defendant leased to the plaintiff an "Innes Potato Harvester" for the term of one year. The agreement provided that the machine was to be delivered to the plaintiff on or before the 20th of April, 1945, "to be used by him for and during the potato harvest season of each succeeding year, beginning about December 20th and ending not later than the 15th day of July, 1945." It was further provided:

"2. First Party warrants that the Innes Potato Harvester herein leased is well made of proper material and workmanship and when properly operated will well do the work for which it is designed and intended. . . ."

Plaintiff agreed to harvest his potato crop with reasonable dispatch and, when finished, to release the machine to defendant so that, if desired by the company, the machine might be leased to some other grower or operator during the same season. The rental was based on the potato yield and on January 15, 1945, plaintiff paid the defendant the sum of $2,000 advance rental for the 1945 season.

After the execution of the lease agreement, Mr. Innes had

difficulty with the War Production Board in procuring authority to make and lease the potato harvesters and returned the $2,000 to the plaintiff. Shortly thereafter, Mr. Innes wrote to the plaintiff stating that he had obtained formal authority from the War Production Board to proceed to make and lease the potato harvesters; that the arrangements the parties had prior to the interruption were valid and that they could proceed as though nothing had happened; that both understood the conditions and terms and that if plaintiff would acknowledge the letter and send a check for $2,000 that that would be all the memorandum necessary for the 1945 season. Plaintiff acknowledged the receipt of the letter and mailed his check for $2,000 to the defendant company.

Some time in the early part of May, 1945, Mr. Innes brought a digger out to plaintiff's field, where it was put into operation, pulled with a tractor belonging to plaintiff and operated by an employee of Mr. Innes.

The digger harvested the potatoes and elevated them into a truck; but in so doing, it took great quantities of dirt and loaded it with the potatoes. The plaintiff had put in a special belt upon which to dump the potatoes in order that they could be handled, but he was only able to handle 300 sacks of potatoes in the one day in which the machine was operated as against a normal day's run of four and five thousand, using the old system of hand digging. During the day's operation, approximately 1½ acres of potatoes were harvested.

The machine was returned to the defendant and in the fall of 1945 plaintiff and Mr. Innes had a further conversation in reference to the potato digger. In this conversation Mr. Innes expressed the belief that he could make the digger work with a pit similar to one used at Pixley, California; that by using a pit and dumping in water, the water would take the dirt out of the potatoes and they could be handled, and that the digger could be used in that fashion. Mr. Innes also stated that they had rebuilt the digger and that he believed plaintiff would have very little trouble with it in the future.

In July or August, 1945, the Innes Food Equipment Company was organized. Mr. Innes was the president of it as well as of the Innes Company.

On April 5, 1946, the Innes Food Equipment Company and plaintiff, F. D. Rakow, executed a memorandum of agreement wherein each party agreed to release the other from any obligation in connection with the stock subscription of Rakow in

the Innes Food Equipment Company. This memorandum also contained the following provision:

"Innes Food Equipment Company, however, is still obligated to harvest 200 acres of potatoes for F. D. Rakow because of $2,000 which he advanced to Innes Company as full payment for such service."

Some time after November 7, 1945, the Innes Food Equipment Company installed equipment to handle potatoes in bulk in plaintiff's building at Edison. This equipment consisted of a reinforced concrete tank with a conveyor and pump to convey the muddy water from a sump in or by the bottom of the tank.

In May, 1946, plaintiff commenced to harvest his potatoes and a digger was again brought to plaintiff's field. Plaintiff testified that it was constructed "better than the previous one" and that it held up and did not break down too much; that it was pulled with his own equipment and operated by the Innes Food Equipment Company; that the machine still brought up as much dirt as always and loaded it on the truck with the potatoes and that it bruised an "awful lot of potatoes"; that there was so much dirt with the potatoes that they could not get them through the machine; that "we were getting too much bruising from the Innes Food Equipment Company and I couldn't continue using the digger, or we would have lost a lot of money on the quantity of potatoes." The digger was operated two or three days and approximately 20 acres of potatoes were dug with it.

The machine used in 1946 was produced by the Innes Food Equipment Company and not by the Innes Company, which had furnished the one operated in 1945. Plaintiff received no refund of the $2,000 deposited by him in 1945 and commenced this action for the recovery thereof on the theory that plaintiff had paid that sum in consideration of which the defendant had agreed to harvest 200 acres of potatoes for plaintiff in the year 1945-46 and that defendant had breached the agreement. In the second count of the amended complaint it was alleged that the defendant had rented the potato harvester to the plaintiff and expressly warranted that the potato digger and harvester, when properly operated, would do the work for which it was designed and intended; that said machine was designed for and intended to be used for the digging and harvesting of potatoes without the use of hand labor in such a manner that the same could be marketed free of dirt; that the machine was wholly unfit for said purpose.

The trial court found that the defendant agreed in writing to rent to plaintiff one potato harvester for the crop season April 20, 1945, and to and including July 1, 1945, and expressly warranted that said potato digger and harvester, when properly operated, would do well the work for which it was designed and intended; that said machine was designed for and intended to be used for the digging and harvesting of potatoes without the use of hand labor, in such a manner that the same could be processed without unreasonable interference by clods and dirt and that the machine was wholly unfit for said purpose; that by reason of the failure of said machine to perform the work for which it was hired and let, the consideration passing to plaintiff wholly failed except for the digging of 20 acres of potatoes. Judgment was rendered in favor of the plaintiff for the sum of $1,800 and a deduction of $200 from the amount claimed was allowed, apparently upon the theory that the digging of 20 acres of potatoes constituted one-tenth performance of the contract.

The Innes potato harvester was warranted to "well do the work for which it was designed and intended" (par. 2 of the contract) and there is substantial evidence in the record that it was intended to eliminate hand picking of potatoes from the ground and to elevate them into a truck. True, there is a conflict in the testimony as to the intended use of the machine, but we are here bound by the trial court's finding in that respect. The weight and sufficiency of the evidence, the construction to be put upon it and the inferences to be drawn therefrom, as well as questions as to the credibility of witnesses and the determination of conflicts and inconsistencies in the testimony were matters for the determination of the trial court. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387].)

The evidence shows that the defendant company furnished the harvester in 1945 and that it was only operated one day. The following season the harvester was furnished by the (Innes Food Equipment Company), a different corporation, which, on April 5, 1946, agreed in writing that the defendant company was still obligated to harvest 200 acres of potatoes for plaintiff because of the $2,000 advanced to the defendant company as full payment for such service. Mr. Innes was president of both companies and the execution of the agreement of April 5th is a strong indication that both plaintiff and defendant were well aware that the machine furnished plaintiff in

1945 would not and did not do the work for which it was designed and intended.

Plaintiff testified that in 1945, before he obtained the machine, they stated to him that they would have a machine that would dig potatoes free of sand and dirt and at the close of the 1945 season Mr. Innes stated that they were going to rebuild the machine and remove more of the dirt. Mr. Innes also informed plaintiff that he could make the digger work by using a pit and dumping in water. We cannot say that there was no substantial evidence upon which the trial court based its findings that the machine was wholly unfit for the purpose let, nor can we say that the court's finding that there was a failure of consideration is not supported by sufficient evidence. The failure of defendant company to perform the contract constituted a failure of consideration. (*Bliss* v. *California Cooperative Producers*, 30 Cal.2d 240, 248, 249 [181 P.2d 369, 170 A.L.R. 1009].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied March 29, 1950, and appellant's petition for a hearing by the Supreme Court was denied April 27, 1950.