[Civ. No. 17705.   Second Dist., Div. One.   Jan. 31, 1951.]

THE TRAVELERS INSURANCE COMPANY (a Corporation) et al., Respondents, v. C. S. HODGE, Appellant.

Max E. Gilmore for Appellant.

Schell & Delamer for Respondents.

HANSON, J. pro tem.—The only question which this suit was brought to determine was whether or not one Steffler was an employee of appellant Hodge at the time he was injured while riding in an automobile owned by Hodge but being driven by one Irby with the permission of Hodge.

The trial court ruled that Steffler was an employee of Hodge and as a consequence of this ruling the respondents as insurers under a property damage and public liability policy issued to Hodge were absolved by the terms thereof from all liability to defend Hodge or to pay any part of any judgment which might be rendered in an action instituted by Steffler against Hodge and Irby.

The insurers instituted their action for declaratory relief not only against their assured, the appellant Hodge, but also against Irby as the driver of the automobile and against Steffler who as a passenger therein was injured.

At the conclusion of the testimony the trial judge found that at the time of the accident Steffler and Irby were both

employees of Hodge and that each of them was acting within the scope and course of business of such employment. The appeal from the judgment perfected in this court is by Hodge alone who contends that the evidence was insufficient to sustain the judgment that Steffler was his employee.

As the rule which governs an appellate court in reviewing a trial court's judgment which it is claimed is not sustained by the evidence is exceedingly well established, we refer only to one of the latest cases on the subject, that of *Dillard* v. *McKnight*, 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835], as our guide and authority without quoting from it or from any other case. We turn at once to a recital of the essential facts.

The National Literary Association named but not served as a party defendant along with Hodge and Irby in the suit instituted by Steffler is engaged in the business of procuring subscriptions to some 60 odd national magazines. Under the contracts it has with these magazines it is permitted to retain as its commission a substantial portion of the regular annual subscription price of these magazines for subscriptions obtained by it. In the furtherance of its business it engages individuals on a commission basis to aid it in procuring subscriptions. According to the only written contract introduced in evidence between the association and Hodge such individuals thus directly engaged by it are denominated as ''dealers.'' It is plain from the contract that the dealers are independent contractors and not employees of the association. They are privileged to engage in any business they choose which does not compete with the association and may operate anywhere in the United States. Moreover, they are privileged to engage other individuals to assist them either as their own employees or as independent contractors.

The testimony of Hodge is that he was orally engaged by the association in 1946, prior to the written contract, to engage ''solicitors'' to procure· subscriptions for the association and to assign such solicitors to work under the direction of a ''manager,'' the latter being a person Hodge had recommended and the association had appointed in that capacity; that the association required a would-be subscriber should pay a certain minimum amount on his subscription to be collected by the solicitor. Until the subscriber paid up his subscription in full he was not entitled to receive the magazine for which he subscribed. The minimum amount was designated as ''front money'' by the association; it was the duty of all the solicitors working as a ''crew'' with the manager to turn

all moneys received on subscriptions during the day over to the manager; that the manager each morning transported the members of his crew from his "headquarters" to the territory he desired them to canvass; that he parcelled out the blocks or streets each solicitor might work; that the manager also worked as a solicitor along with his crew; that at the end of the day the manager again transported the crew to his headquarters; that the solicitors then turned over to the manager the signed subscriptions and moneys collected along with their written "certificates of authority" authorizing them to solicit magazine subscriptions for the National Literary Association. These certificates were returned to the solicitors out on the "territory" selected by the manager each morning when they went to work; that it was the duty of the manager to mail to the association all signed subscriptions procured by the solicitors along with a check for any excess of moneys collected over and above the front money; that each solicitor was entitled to receive from the manager for his services a commission of 50 per cent of the front money; that the manager was entitled to retain the balance of the front money collected by the solicitors and 100 per cent of the front money collected directly by him from subscribers he personally procured.

Hodge further testified that, by his oral contract with the association, his compensation for the services he rendered in procuring and recommending managers and in procuring and assigning solicitors to the managers was a percentage of the business done by each manager and his crew of solicitors. There is no evidence that a manager could appoint or discharge a solicitor other than the testimony of Hodge who testified the manager could discharge a solicitor. On the other hand the manager Irby testified he was invested with no such authority either from Hodge or from the association. While the evidence disclosed that the solicitors out on a territory were subject to the orders of the manager, there is no evidence they were engaged by him or were his employees, unless in the case of Irby it may be said he was a joint adventurer with Hodge.

█ Hodge testified he was not only entitled to assign solicitors to a manager, but also to reassign them to other managers. Hence it appears Hodge controlled the number and personnel of each crew. Hodge out of his own funds purchased and loaned automobiles without charge to the managers he had recommended and who, he says, were appointed by the association. He did this, he says, because his commissions depended on the volume of the business done by the manager

and his crew. In his endeavor to procure solicitors Hodge ran ads in the newspapers at his own expense, interviewed the applicants and if he chose engaged them as solicitors and assigned them to a manager.

No representative of the association testified in court or by deposition as to relations existing between the association and Hodge, Irby, and Steffler. However, there was introduced into evidence, as above stated, a written contract entered into between the association and Hodge on April 17, 1948. Hodge testified his work for the association was along the same lines *both before and after* he entered into that contract. The contract, however, which names Hodge as dealer does not create any relation of employer and employee but makes Hodge an independent contractor. It gives him the authority to solicit subscriptions for the magazines represented by the association with the right to retain the front money on each subscription and to receive from the association 35 per cent of the subscription in excess of the front money when it is received by the association. It provides the dealer may delegate his authority to anyone he chooses to employ or to anyone with whom he desires to contract for the purpose of soliciting additional subscriptions, but as to such persons the dealer shall be liable to the association for "balance moneys" collected and not remitted. The contract gives Hodge no authority to employ anyone in behalf of the association.

Irby testified, and Hodge did not deny, that he first went to work in February, 1946, as an employee of Hodge in a crew managed by Hodge; that later he took over a crew of his own after a discussion with Hodge as to the share which each of them would receive from the earnings of this crew and that he thereafter continued as the manager of a crew and that it was while he was so working the accident occurred.

Without detailing further the facts, it is evident that the trial judge was justified from the testimony so far narrated to draw the inference, despite Hodge's testimony, that Hodge's relation to the association never had been other than as set forth in the written contract. On that basis he was entitled to conclude that Hodge as an independent contractor employed Irby and Steffler, one as a manager, and the other as a solicitor of one of his crews. The power and authority which Hodge possessed as an employer he necessarily could delegate to Irby and as a consequence require Steffler to obey Irby's instructions without any specific instructions or orders from Hodge. Another inference the trial court was entitled to draw was

that Hodge and Irby were joint adventurers with respect to the crew Irby managed. If that was the court's view Steffler was an employee of both Hodge and Irby.

Additional facts tending to show that Hodge controlled the activities of Steffler through his employee or joint adventurer Irby need not be recited. They only add up to a further showing that the trial court was correct in its decision.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.