[Civ. No. 4042. Fourth Dist. Feb. 26, 1951.]

E. L. ALDRICH et al., Respondents, v. BERTHA M. RANKIN, Appellant.

Dreyfus, McTernan & Lubliner, Benjamin Dreyfus, Dorris, Fleharty & Phillips and D. M. Phillips for Appellant.

West, Vizzard, Howden & Baker and James Vizzard for Respondents.

MUSSELL, J.—On August 28, 1946, plaintiffs and defendant entered into a conditional sales contract providing for the sale by plaintiffs to defendant of a "Buda" engine, carburetor and pump. The total price of this equipment was stated in the contract to be the sum of $9,967.27, and while the price of the engine was not therein separately stated, the evidence is that it was $4,220.67, plus sales tax amounting to $105.52. Defendant paid the specified down payment of $3,000 but did not pay the balance which was due and payable on January 1, 1947. On January 15, 1948, plaintiffs filed the instant action for the recovery of the engine or, in the alternative, for damages in the sum of $4,600, and other relief. Defendant answered and cross-complained and alleged, among other things, that she had refused to accept the engine and rescinded the contract; that the engine delivered by plaintiffs failed to work properly, or at all; that it would not furnish water, and that plaintiffs had failed either to remedy or replace it, although they had repeatedly promised to do so. Defendant prayed for the return to her of the $3,000 down payment and for other relief.

The cause was tried before the court without a jury and on May 23, 1949, judgment was entered for the recovery of "a certain Buda engine . . ." or "in the event delivery cannot be had, the sum of $4,325.84", $300 attorneys' fees and costs. It was further adjudged that the cross-complainant be denied relief on the cross-complaint.

On July 26, 1949, the court amended its findings of fact and judgment to provide "that the reasonable value of the engine be declared to be the sum of $2,100, and judgment shall be that the plaintiffs recover the property, or in case the same cannot be had, then and in that event to recover the sum of $2,100, and that the findings of fact and judgment shall in all other respects remain the same."

The defendant appeals from the judgment of May 23d and from the judgment as amended on July 26th.

The trial court found, in effect, that the engine was fit and proper and suited to the purposes for which it was purchased and that all of the allegations in the pleadings to the contrary

were untrue. The findings in this respect are attacked by defendant on the ground of the insufficiency of the evidence to support them.

There is a conflict in the evidence as to the fitness and suitability of the engine. Defendant testified that it operated satisfactorily for a few hours after it was first installed; that the tubing then became covered with frost, causing the engine to stop; that she was able to start it again by pouring hot water on the tubing but the engine did not run continuously without defrosting; that the continuous trouble was due to the "Holzapfel" carburetor furnished with the equipment and that plaintiffs failed to furnish an "Ensign" carburetor as promised.

A dealer, handling "Ensign" carburetors, testified that there were no carburetors which could be used on butane and Buda engines of comparable quality to the "Ensign" and that the "Holzapfel" installed would not operate the engine properly; that he had inspected the equipment and found that the engine was carrying an extreme load for the "Holzapfel" and that it would "freeze up."

A mechanic, called by plaintiffs, testified that he was familiar with Holzapfel carburetors and that their heat exchangers would not permit the passage of enough heat to vaporize the engine fuel; that this caused a "freezing" of the carburetors.

In opposition to the foregoing evidence, Mr. Holman, one of the plaintiffs, testified that he installed the engine on August 6, 1946, to be used on one of the defendant's pumps then on her premises; that the pump described in the contract was never delivered to defendant because she refused to accept it; that there was some carburetion service required on the engine after its installation and that he sent a man out to take care of it; that after the trouble, Mrs. Rankin stated that she wanted an "Ensign" carburetor; that he provided one and sent a man out to install it, but that defendant refused to accept it or permit its installation.

A farmer, operating near the well on which the Buda engine was placed, and who was able to observe the operations on defendant's ranch, testified that to the best of his knowledge defendant's well was operated with the Buda engine and was pumping around 1,800 or 1,900 gallons per minute; that defendant had plenty of water for the crops that were to be irrigated by the well and engine; that he saw some ice on the carburetor and that it was necessary to thaw it out a time

or two; that this was not a daily occurrence but just happened occasionally and he had seen the same thing happen with other pumps and that it was not an unusual occurrence in his experience; that after Mr. Holman's employee had run some copper tubing in the manifold, there was no trouble "to speak of."

Mr. Noble, an employee of the plaintiffs, testified that he went out in 1946 to work on the carburetor; that the heat exchanger would "sort of get cool and freeze up" and that it was possible to adjust the cooling system to counterbalance the temperature. He testified to changing the line on the heat exchanger so that it would run by the manifold and that "somebody would tinker with the valve on the cooling system and it would be wide open"; that he later went out to exchange the heat exchanger and after putting on a new one, had no more calls from defendant to service the pump; that the "Holzapfel" carburetor was the type that was being put on all Buda engines at that time; that his first service call was probably a week after the engine was installed; that a few days later he was called again and on this occasion he "found the valve was left open again, letting the water flow too fast through the engine"; that he shut the valve and changed the lines and told Mrs. Rankin that if the valve was kept pinched down it would keep the temperature up on the engine; that he was not called again to service the equipment.

The trial court resolved the conflict in the evidence in favor of the plaintiffs and its finding as to the fitness and suitability of the engine is conclusive upon appeal. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].)

Defendant contends that there was a breach of warranty in that the engine furnished was not fit and suited for her purposes. However, the evidence heretofore discussed is sufficient to support the court's finding to the contrary and that defendant did not rely on such a warranty. There is substantial testimony that she was able to irrigate her crops by using the Buda engine and Holzapfel carburetor and that she did not attempt to rescind the agreement until some time in February, 1947, at which time the plaintiffs had already offered to furnish an "Ensign" carburetor, which, according to defendant's testimony and that of her various witnesses, would have been required to insure satisfactory performance by the Buda engine. It appears that the complaints about the engine made by the defendant and particularly about the

carburetor were made prior to the signing of the contract on August 30, 1946, and ''that she nevertheless signed the agreement on that date and completed the down payment.''

■ Defendant next contends that the conditional sales contract, insofar as it provides for liquidated damages, is void. However, the evidence is uncontradicted that the defendant failed and refused to complete the payments under the contract and refused to return the engine or permit the plaintiffs to repossess it. Under these conditions, the defendant may not recover the down payment made on the contract and it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages.

In *Moore* v. *Mosher,* 88 Cal.App.2d 324, 326 [198 P.2d 714], the court said, quoting from cases therein cited:

'' 'No rule is more firmly settled with relation to contracts for purchase, whether concerning real or personal property, than that to the effect that a vendee, who without lawful right refuses to go on with his contract, cannot recover from a vendor not in default who is ready and willing to proceed and fulfill all his obligations, all or any of the money that he had paid to the vendor in accord with the terms of the agreement. This rule has been uniformly applied in California. It was declared in both opinions in *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, 10, 19, 20 [69 Am.St.Rep. 17, 43 L.R.A. 199, 55 P. 713], the opinion of Mr. Justice Henshaw saying that in such a case the vendor, ''Still resting upon the contract, . . . may remain inactive, yet retain to his own use the moneys paid by the vendee; so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages,'' and the opinion of Mr. Justice Harrison declaring it to be the law of the state that ''the vendee, who was himself in default in the payment of a portion of the money, could not against the will of the vendor repudiate the contract and recover the portion already paid.'' Many cases might be cited in which this rule has been applied, but the rule is not disputed, and it is plain that plaintiff has no right of recovery here except upon the theory of mutual abandonment and rescission. Upon the facts of his case there is no other possible foundation for a right of recovery on the part of plaintiff.' ''

■ *Finally, it is* contended that the alternative judgment is invalid in that the value of the engine is fixed in the judgment as of the time of its sale and not as of the time of the

attempted repossession. This contention is without merit. The testimony of the plaintiffs was that the sales price of the engine was approximately $4,300. Defendant testified that she had ascertained the then price of a Buda engine and that it was $5,676 f.o.b. Los Angeles. Mr. Holman testified that the market value for secondhand engines was cut in half. The equipment was used by defendant for approximately two months and there was testimony that there had been a 15 per cent increase in the price since it was sold to the defendant. The evidence was sufficient to sustain the finding of the trial court in the amended judgment that the reasonable value of the engine at the time of the attempted repossession was the sum of $2,100.

The amended judgment is affirmed.

Griffin, Acting P. J., concurred.