[Civ. No. 23706. Second Dist., Div. One. Aug. 7, 1959.]

WILLIAM R. STOUT, Appellant, v. DEPARTMENT
OF EMPLOYMENT et al., Respondents.

Henry M. Luppi and Clarence E. Nelson for Appellant.

Stanley Mosk, Attorney General, William L. Shaw, Deputy Attorney General, Gibson Dunn & Crutcher and James J. Ryan for Respondents.

FOURT, J.—This is an appeal by William R. Stout, who was discharged by his employer, Los Angeles Transit Lines on August 5, 1955, for misconduct connected with Stout's most recent work with the employer. On August 7, 1955, Stout filed a claim for unemployment insurance benefits with the Department of Employment. On August 30, 1955, the Department issued and served its determination that unemployment insurance was not payable for the five weeks period beginning August 7, 1955, and ending September 10, 1955, stating as its reason for decision: "Although there is some conflict in details between employer and claimant, established claimant printed unauthorized handbills which caused company harm in prestige and public relations. On this basis claimant was discharged for misconduct within the meaning of the California Unemployment Insurance Code."

The provisions of the Unemployment Insurance Code under which Stout was held to be disqualified are:

Section 1256: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.

"An individual is presumed to have been discharged for reason other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims."

Section 1260: "If an individual is disqualified under Section 1256, under a determination transmitted to him by the department, he is ineligible to receive unemployment compensation benefits for the week subsequent to the occurrence of the cause

of his disqualification in which he first registers for work and for not more than four weeks which immediately follow that week. If an individual is disqualified under Section 1257, under a determination transmitted to him by the department, he is ineligible to receive unemployment compensation benefits for the week subsequent to the occurrence of the cause of his disqualification in which he first registers for work and for not more than nine weeks which immediately follow that week. An individual so disqualified shall be required to report at a public employment office as provided in subdivision (b) of Section 1253 and an additional week of disqualification shall be imposed for each week during which he does not so report unless good cause for such failure is shown.''

Stout filed an appeal to a referee and a hearing on this appeal was had on October 19, 1955, on November 23, 1955, and on January 31, 1956, before Referee C. B. Cowgill. Stout was represented at each of the above hearings by counsel, and a verbatim transcript of the proceedings was made by a reporter. By a decision dated February 8, 1956, Referee Cowgill found that Stout ''authored, posted, distributed, or otherwise caused to be published to employees, union officials, and the public, derogatory literature containing statements, charges and allegations against the employer and the union which were not true.'' The referee further found ''the literature was widely discussed among employees,'' and he affirmed the determination and ruling of the department that Stout was disqualified for benefits for five weeks as provided in sections 1256 and 1260 of the Unemployment Insurance Code.

A written appeal from the decision of the referee was thereafter filed on behalf of Stout acting through his counsel to the California Unemployment Insurance Appeals Board, and the. matter was orally argued before an appeal board of three members on July 10, 1956. The decision of the referee was affirmed on August 3, 1956.

Thereafter and on August 19, 1957, an alternative writ of mandate was issued by the superior court for the purpose of inquiring into the validity of the administrative decision made as a result of said proceedings. A third amended complaint was filed on December 26, 1957, which was entitled ''Petition for a Writ of Mandate, Pursuant to the Provisions of Section 1094.5, Code of Civil Procedure.'' The matter was .heard on April 14, 1958, and on May 8, 1958, the court ordered the alternative writ quashed, and denied the peremp-

tory writ. Findings of fact and conclusions of law and judgment were filed on June 6, 1958. Said findings of fact included the following:

"V. That prior to his final termination of employment with the employer, Stout authored, posted, distributed, and otherwise caused to be published to the employer's employees and to union officials and to the public at large, derogatory literature containing statements, charges, and allegations against the employer; that these publications in great part were not true in fact; that some of the allegations set forth by Stout in his writings against the employer were in the nature of grievances; that as to alleged grievances affecting the employer and a union member such as Stout, there is an established grievance procedure in effect at all times here involved relative to the handling and processing of such grievances; that Stout did not file or launch any alleged grievances through the established employer-union procedures; but, rather, elected to publish and distribute his 'grievances' to fellow employees, the employer, the union and the public in general.

"That on March 21, 1955, Stout was interviewed by the employer's General Superintendent of Transportation; that for about two hours, Stout's activities (in the matter of publication and distribution to the public and to union members and to fellow employees, as referred to above) were discussed personally by Stout and the employer's representative; that in this connection, many hand bills and notices originating with Stout were examined and the contents discussed and analyzed; that the employer's representative made it clear to Stout at this time that Stout would be discharged in the future if Stout ever again posted, distributed, or caused to be published, similar defamatory material directed by Stout against the employer.

"That subsequent to the employer's warning, and preceding his termination of employment with the employer, however, Stout again distributed or caused to be published at least five or more separate pieces of literature in great volume to employees and to the public; that this new literature contained statements and allegations that were and are not true and contains criticisms of the employer not founded on fact; that the untrue and unfounded statements were derogatory to the employer's general interests with the public and the union members and the employees of the employer; that Stout's literature came to the attention of many members of the

union and to the attention of many fellow employees and to the attention of a unknown number of members of the public at large;

"VII. That the referee at all times in the conduct of the hearing or hearings affecting Stout and in the receipt of oral and documentary evidence acted with regard to all applicable provisions of the Code and the statute and the case laws of California:

"IX. . . . That the Appeals Board in its consideration and decision upon the record before the Appeals Board, at all times, in connection with the issuance of Benefit Decision 21161, acted in complete conformity with regard to the Code and the statute and case law of California and the facts of the herein controversy as developed by the referee affecting Stout, the employer and the Department.

"X. That during the existence of a trade dispute between the employer and the union, there did not arise a justification in fact or an excuse in Stout to perform misconduct directed against the permanent interest of the employer and without advance opinion, knowledge or concurrence in the union as to Stout's activities by way of Stout's release of diverse and derogatory pamphlets and publications directed against the employer; that Stout, during a trade dispute, could not so conduct himself as to condemn, libel and slander the employer without regard to the truth or lack of truth of his publications through pamphlets and other printed matter; that Stout, if he believed himself personally aggrieved, could have redress through the union through well known grievance procedure, but that Stout elected to ignore the grievance procedure within the union and to communicate in writing directly to the public and to the union members and to fellow employees against the employer.

". . . . . . . . . . . . . .

"XII. That the exhibits received. by the referee in the course of hearing were properly received and considered by the referee as tending to establish or to deny any rights in Stout to the receipt of unemployment insurance benefits under the Code; that the referee and/or the Appeals Board in the receipt and consideration of evidence complied with the provisions of Section 1952 of the Code in the conduct of administrative hearings.

"XIII. . . . that it is not true that Appeals Board Decision 21161 is in excess of the statutory jurisdiction of the Appeals Board or is arbitrary, capricious or abusive of discretion

vested under the Code and by general law in the Appeals Board; that it is not true that at the referee's hearing there was any violation of any constitutional rights existing in Stout; that at all times here involved, Stout was not entitled to the receipt of unemployment insurance benefits because of the application of the provisions of Section 1256 of the Code."

In this appeal it is contended that the referee committed prejudicial error by admitting in evidence documents for which no proper foundation was laid, and that an order of an administrative board based upon incompetent hearsay evidence contravenes due process and cannot stand. The documents received and admitted in evidence over objection were typed on a portable Corona typewriter, and consisted of documents captioned as follows: "Petition Demanding High Seniority Holding V Line Man Be Given Adequate and Sufficient Training to Hold Jobs on Other Lines," "Save Your Job," "What Fools We Mortals Be," "Raw Deal Given Old Timers on V Line," "The V Line Abolished," "Let's Keep The V Line," "Trainmen On V Line," "Just Because You Drive the family auto, just because you drive a streetcar up and down stationary still tracts . . . etc.," "Hark the Master's Voice," "Time for a New Contract . . . all we ask Is Decent Working Conditions," "Did You Fight for America . . . etc.," "Work for L.A.T.L., and You Will Run . . . etc." and "Strike, Strike . . . etc." Certain letters were also received and admitted in evidence over objection. The letters were not dated, and no proof was offered of when they were made or signed, nor were the subscribers called to testify. A handwriting and typewriting expert testified that each was written on Stout's Corona typewriter. The letters bear the following signatures: Richard De Mott, 2158 East (11 . . . ?) Street, Los Angeles; Eugene Washington, 242 West 48 Str.; W. Dangerfield; Doras Hall, 1015 Leighton; Carol Trammel, 13229 Towne Ave., L.A. 61, Calif.; Mrs. M. Gardenia, 1212 West 37th St., L.A. 7, Calif."

No objection was offered to the introduction of certain circulars or bulletins, as follows: "Speaking of Half-Truths," subscribed to and bearing nine signatures; "Speaking of Half-Truths," subscribed to and bearing ten signatures; "Something We Will Always Remember" by Harry B. Shepard; "Something to Remember" signed B. Shepard, Hellman and Harrison.

■ ·Appellant correctly states the rule to be that "in reviewing orders or decisions of administrative tribunals the courts of this state are charged with the duty to ascertain if there was a fair trial, and if such orders or decisions are supported by substantial evidence, in the light of the whole record." As authority for the above statement of the law, *Thompson* v. *City of Long Beach,* 41 Cal.2d 235 [259 P.2d 649], is cited, which involved a judgment affirming an order discharging a stenographer from classified civil service.

■ Therein at page 246, the court stated: "As has so often been said, questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses commensurate with their conduct and manner of testifying, and the determination of conflicts and inconsistencies in their testimony are matters for the trial court to resolve. (*Dillard* v. ·*McKnight,* 34 Cal.2d 209, 223-224 [209 P.2d 387, 11 A.L.R. 2d 835].) The court was not bound to accept appellant's evidence or her conclusion as to her readiness, ability and willingness to perform satisfactory stenographic work in the city's service as of September 7, 1949, and its contrary finding based on substantial evidence is final and conclusive on appeal. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 184 [168 P.2d 946].)''

■ As authority for the statement that "in examining the record of an administrative board nothing may be treated as evidence that has not been introduced as such," appellant cites *La Prade* v. *Department of Water & Power,* 27 Cal.2d 47, 51 [162 P.2d 13]. In the above case, the court stated (at p. 51), "In the instant case no evidence of any kind was introduced before the board. The board must have, as before seen, and as indicated by its minutes, based its determination on the report of its investigator. The question then arises, aside from the question of the sufficiency of that evidence, whether petitioner was accorded the hearing to which he was entitled." ■ In marked contrast is the instant case wherein each of the above mentioned documents, letters and circulars were introduced into evidence, and extensive oral testimony was adduced.

■ Appellant cites the case of *Kinney* v. *Sacramento etc. Retirement System,* 77 Cal.App.2d 779, 782 [176 P.2d 775] as authority for the statement, "And an order of an administrative board based upon incompetent hearsay evidence contravenes due process and cannot stand." The language of

the court on this matter is as follows: "The rule seems to be clear that, if a local administrative board bases its order *solely* on incompetent hearsay evidence, it acts arbitrarily, capriciously and in abuse of its discretion, and its order cannot stand." (Emphasis added.) In *Kinney* v. *Sacramento etc. Retirement System, supra,* the court further emphasized its point by stating (at pp. 782-783) : "Since, as far as the record discloses, *there was no competent evidence* before the board outside of said report to refute the uniform proof that applicant's disability was due to the performance of his duty (citing case) within the meaning of the charter, there was a clear abuse of discretion on the part of the board in refusing petitioner's application, and the superior court correctly, as a matter of law upon the undisputed evidence, granted the writ of mandate prayed for by her." (Emphasis added.) Considerable competent testimony was adduced and a number of documents were introduced in the instant case without objection. Any claimed contravention of due process on that basis is, therefore, clearly inapplicable to the proceedings in question.

Similarly inapplicable to any problem before this court are the cases cited by appellant with respect to the unconstitutionality of certain ordinances prohibiting the distribution of literature in the streets or public places.

We have carefully reviewed the entire transcript of the proceedings before the referee and we have examined the exhibits introduced thereat; and we have reviewed the transcript of the oral arguments presented to the appeals board. We agree with the findings of the trial court that the referee at all times in the conduct of the hearing or hearings affecting Stout and in the receipt of oral and documentary evidence acted with regard to all applicable provisions of the code and the statute and case laws of California. As a matter of fact, in our opinion the hearings were conducted in a most fair and impartial manner, and appellant Stout was accorded far more consideration than is his right under any constitutional guarantee.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.