Filed 6/6/14  Misik v. D'Arco CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS MISIK,  Plaintiff and Respondent,  v.  THOMAS R. D'ARCO,  Defendant and Appellant. | B242398  (Los Angeles County Super. Ct. No. GC041193) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph F. De Vanon, Judge.  Affirmed.

Lurie & Associates, Barak Lurie and Michael J. Conway for Plaintiff and Respondent.

Thomas R. D'Arco, in pro. per.; Law Offices of Steven Rein and Steven Rein for Defendant and Appellant.

## INTRODUCTION

This is the second appeal in this matter. In the previous appeal, we reversed an order denying plaintiff Thomas Misik's motion to amend the judgment to add defendant Thomas R. D'Arco as a judgment debtor. The judgment found a corporate entity, Sayrahan Group, LLC (Sayrahan), liable for breach of contract. Misik's motion sought to hold D'Arco liable for the judgment against Sayrahan on the theory that D'Arco was Sayrahan's alter ego. We concluded the trial court erroneously denied the motion on inapposite procedural grounds, and remanded the matter with directions to conduct new proceedings and make a factual determination as to whether the elements of alter ego liability were satisfied.

On remand, the trial court conducted new proceedings, made factual findings supporting application of the alter ego doctrine, and granted Misik's motion to amend the judgment to add D'Arco as a judgment debtor. D'Arco now appeals from that order. We conclude the trial court's findings were supported by substantial evidence and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

### 1.    *The Loan Transaction*

At the behest of another defendant, Martin Ballardo, Misik delivered $150,000 in exchange for two interest-bearing notes and deeds of trust. The notes identified Sayrahan as payor and promised Misik annual interest at a rate of 12 percent commencing on May 17, 2007, and June 18, 2007, respectively. D'Arco signed the notes as Chief Executive Officer of Sayrahan.

Before making the loans, Misik had never heard of Sayrahan, and thought he was lending directly to Ballardo. Misik did not speak with D'Arco before lending the money, did not know that D'Arco owned Sayrahan, and did not know Sayrahan was going to issue the promissory notes.

After delivering the loan proceeds, Misik received several post-dated checks representing interest payments. One of these checks was from D'Arco's personal account.

2

Shortly thereafter, Sayrahan stopped making payments on the notes. Misik demanded his money back from Ballardo and D'Arco, but they refused to pay him.

2.      *The Complaint and Judgment*

On July 22, 2008, Misik filed a complaint alleging, inter alia, breach of contract against Sayrahan and fraud against Ballardo and D'Arco. After a bench trial, the court found Misik had lent Sayrahan $150,000, in exchange for which Sayrahan gave Misik two promissory notes; the notes obligated Sayrahan to pay back the principal within two years at a 12 percent annual interest rate; and Sayrahan failed to pay Misik any of the principal or interest due and owing under the notes. The court also found that Ballardo intentionally defrauded Misik by inducing him to lend $150,000 to Sayrahan as a conduit for Ballardo's own financial gain. The court did not find D'Arco liable for fraud.

On November 4, 2009, the trial court entered judgment for Misik on the breach of contract claim, finding Sayrahan liable to Misik for $150,000 plus interest at an annual rate of 12 percent accruing from April 2008 through May 2009. The judgment also found Ballardo liable to Misik for fraud in the amount of $150,000.

3.      *The Judgment Debtor Examination and Motion to Amend the Judgment*

On January 15, 2010, Misik conducted a judgment debtor examination of Sayrahan through its principal, D'Arco. D'Arco gave the following testimony about Sayrahan:

- D'Arco always had 100 percent ownership of Sayrahan. D'Arco alone made all binding decisions for Sayrahan and no one else had the ability to make a decision that could bind Sayrahan. Other than D'Arco, Sayrahan never had any officers or employees.

- No one ever prepared or kept corporate meeting minutes for Sayrahan.

- Sayrahan never had a business address or phone number separate from D'Arco's residence. Sayrahan never had its own website.

3

- Sayrahan owed more money than it had in its checking account immediately after receiving the loan proceeds from Misik. Since 2007, there was never a month during which Sayrahan's starting or ending account balance exceeded $3,266.66.

- Sayrahan's bank account had no money by the end of December 2009. As of the debtor examination, Sayrahan owned no assets whatsoever. Any real property that Sayrahan previously owned had been lost in foreclosure by 2008.

- D'Arco "possibly, but very rarely" paid Sayrahan's debts with funds from other bank accounts.

On February 5, 2010, Misik filed a motion to amend the judgment to add D'Arco as a judgment debtor. Misik alleged D'Arco's debtor examination testimony, together with records obtained in connection with the examination, established Sayrahan was a mere shell and the corporate veil should be pierced to hold D'Arco liable as Sayrahan's alter ego. The trial court denied the motion. Misik appealed.

4. *Misik I*

In *Misik I*, we concluded the trial court erroneously denied Misik's motion to amend the judgment without considering evidence that could support application of the alter ego doctrine. Addressing one of the trial court's apparent grounds for denying the motion, we explained that the alter ego doctrine does not require proof of fraud where the evidence shows adherence to the fiction of corporate separateness would promote injustice. Hence, the fact that D'Arco obtained a favorable verdict on the fraud cause of action did not preclude a finding that he was Sayrahan's alter ego. (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1074 (*Misik I*).)

4

With respect to the trial court's other apparent ground for denying the motion, we explained that Code of Civil Procedure[1] section 187 does not require a plaintiff to allege and prove alter ego liability before entry of judgment.[2] Because "[a] court may amend its judgment so it will properly designate the real defendants at any time [Citation], including after judgment," we held the absence of alter ego allegations against D'Arco in Misik's complaint did not preclude amending the judgment to add D'Arco as a judgment debtor. (*Misik I, supra,* 197 Cal.App.4th at p. 1075.)

Finally, we cited evidence in the record suggesting D'Arco had control of the litigation against Sayrahan and was virtually represented in the lawsuit. This included evidence that "D'Arco, an attorney, filed answers to the complaint on behalf of himself and on behalf of Sayrahan; the same attorney, Steven Rein, represented Sayrahan and D'Arco in trial and in postjudgment proceedings; Sayrahan and D'Arco submitted a joint defense; and D'Arco testified at trial as a witness on his own behalf and on behalf of Sayrahan." (*Misik I, supra,* 197 Cal.App.4th at p. 1075.) Because "a court has authority to impose liability under a judgment on an alter ego who has control of the litigation," we held the trial court should also consider this factor in determining whether to amend the judgment. (*Ibid.*)

Thus, we reversed the order and remanded the matter "with directions to the trial court to vacate the order denying the motion to amend the judgment, to conduct further proceedings on plaintiff's motion to amend the judgment, and to make a factual determination on whether the evidence is sufficient to show that defendant Thomas D'Arco was the alter ego of Sayrahan Group, LLC, and whether Thomas D'Arco should

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise designated.

[2]     Section 187, which grants courts "all the means necessary to carry [their jurisdiction] into effect" (§ 187), authorizes a trial court to amend a judgment to add a judgment debtor who is found to be an alter ego of a corporate defendant. (*Misik I, supra,* 197 Cal.App.4th at p. 1072.)

be added as a judgment debtor to the judgment for breach of contract." (*Misik I, supra,* 197 Cal.App.4th at pp. 1075-1076.)

   5.     *The Order Granting the Motion to Amend the Judgment*

Consistent with our directions in *Misik I*, the trial court held further proceedings on Misik's motion to amend the judgment, and allowed the parties to submit additional evidence and case law that had not been presented prior to the appeal.

Misik again relied upon D'Arco's debtor examination testimony and records obtained from Sayrahan. D'Arco's new evidence consisted of his own declaration, wherein he attempted to explain why his debtor examination testimony did not support a finding of alter ego liability. Among other things, D'Arco stated that in May and June of 2007, when Misik made the underlying loans, Sayrahan held equity in several developed and undeveloped parcels of real property totaling $400,000 to $500,000. D'Arco also attached several exhibits to his declaration, consisting largely of Sayrahan's records related to the underlying loan transaction. None of the exhibits substantiated D'Arco's assertions about Sayrahan's real property holdings at the time of the loan transactions.

On April 18, 2012, the trial court heard argument on Misik's motion to amend the judgment. On April 24, 2012, the court granted Misik's motion to add D'Arco as a judgment debtor. In finding Misik had presented sufficient evidence to establish alter ego liability, the court stated it "relied on the following evidence:

"* D'Arco sometimes paid the debts of the corporation, thus appearing to hold himself out as liable for the debts of the corporation;

"* The corporation failed to maintain the corporate records or minutes;

"* The corporation used D'Arco's home as the business address;

"* The corporation never had any officers or employees;

"* D'Arco is the sole owner of all stock;

"* The corporation was not adequately capitalized."

The court further found that "if corporate separateness is respected, an inequitable result will follow." D'Arco filed a timely notice of appeal.

6

## DISCUSSION

1.  *Res Judicata Does Not Apply*

We begin with D'Arco's contention that the order granting Misik's motion to amend the judgment was barred by res judicata. "Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.) As we shall explain, res judicata does not apply here, because there was no prior proceeding that adjudicated whether D'Arco could be held liable as Sayrahan's alter ego.

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents *relitigation of the same cause of action in a second suit* between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and *decided in prior proceedings*.' " (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 896-897, italics added.) Thus, in both its aspects (claim preclusion and collateral estoppel), application of res judicata in a given case requires an affirmative answer to three questions: "Was the issue decided in the prior adjudication *identical* with the one presented in the subsequent litigation? Was there a final judgment on the merits? Was the party against whom the principle is invoked a party or in privity with a party to the prior adjudication?" (*Dillard v. McKnight* (1949) 34 Cal.2d 209, 214 (*Dillard*), italics added.) In the present case, because the first question must be answered in the negative, res judicata does not apply.

The issue whether D'Arco could be held liable as Sayrahan's alter ego was not raised or decided prior to Misik's motion to amend the judgment. Indeed, this fact was a linchpin for our determination in *Misik I* that the order denying the motion to amend constituted an appealable postjudgment order. As we explained there, "[t]he appeal from the order [denying the motion to amend the judgment] raises issues *different* from issues arising from an appeal from the judgment." (*Misik I, supra,* 197 Cal.App.4th at p. 1071, italics added.) Misik's complaint did not allege alter ego liability, and the issue was not raised until after D'Arco's debtor examination, which occurred after entry of judgment. Because the judgment did not decide whether D'Arco could be held liable as Sayrahan's

7

alter ego, there is no prior adjudication to be given res judicata effect.  The issue was not previously decided—res judicata does not apply.[3]

We could end our discussion here.  However, because there appears to be confusion about the court's reference to res judicata in *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486 (*Greenspan*), we will briefly address that case.  D'Arco contends "[t]he *Greenspan* case and res judicata prohibit the [s]ection 187 motion."  (Boldface and underscoring omitted.)  We disagree.

In *Greenspan*, the appellate court reversed an order denying the plaintiff's motion to amend the judgment to add one of the defendants, Barry Shy, as a judgment debtor under section 187 on the theory that Shy was the alter ego of a corporate defendant found liable for breach of contract.  In denying the motion, the trial court determined it could not add Shy as a judgment debtor because the plaintiff "could and should have pursued his alter ego theory against Shy in the [underlying] arbitration."  (*Greenspan, supra,* 191 Cal.App.4th at p. 514.)  In attempting to discern the legal basis for the trial court's ruling, the appellate court observed that it seemed to be "some kind of equitable rule that, at a minimum, borrows concepts from res judicata or collateral estoppel."  (*Ibid.*)  The court then went on to explain "why those doctrines are irrelevant in this case."  (*Ibid.*)  In pertinent part, the court concluded that "[a]dding Barry Shy as a judgment debtor under

---

[3]     Res judicata also does not apply because the postjudgment proceeding to add D'Arco as a judgment debtor does not constitute a "subsequent litigation" in the sense required to give preclusive effect to a prior final judgment.  (See *Dillard, supra,* 34 Cal.2d at p. 214.)  A judgment or order may be final in nature, but it does not become res judicata until it is final in the sense of being free from direct attack.  (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 364, p. 986.)  That is, for res judicata, a judgment is not final while an appeal is pending or, if no appeal has yet been taken, until the time to appeal has expired.  (*Ibid.*; see *People ex rel. Gow v. Mitchell Brothers' Santa Ana Theater* (1980) 101 Cal.App.3d 296, 306.)  Because finality in this sense means there will be no further proceedings in the lawsuit, the necessary implication is that a "subsequent litigation" for res judicata purposes must be a lawsuit different from the one that produced the final judgment.  In the present case, the judgment is not final for res judicata purposes.  Thus, it follows that the proceeding to amend the judgment was not a subsequent litigation for res judicata purposes either.

8

section 187 is unrelated to the liability determinations made in the arbitration" and, therefore, the trial court's pseudo-res judicata basis for denying the motion was erroneous. (*Greenspan,* at pp. 516-517.) This is consistent with our conclusion that res judicata does not apply in the present case because the issue of alter ego liability was not previously adjudicated.

D'Arco contends res judicata did not apply in *Greenspan* because the plaintiff had no reason to suspect the existence of an alter ego relationship. In contrast, he claims Misik knew or should have known of the facts supporting alter ego liability; thus, he argues the opposite result should follow—res judicata should bar Misik from prevailing on the section 187 motion. D'Arco's argument misinterprets the *Greenspan* court's res judicata analysis, which had nothing to do with the plaintiff's lack of knowledge concerning an alter ego relationship.[4] In any event, notwithstanding his claimed reliance on res judicata principles, it appears that what D'Arco means to argue is some form of equitable estoppel or waiver based on Misik's purported failure to allege known facts supporting alter ego liability prior to entry of judgment. We will address that issue in connection with our discussion of the evidence supporting the trial court's alter ego findings. We turn to those findings now.

---

[4]    Contrary to D'Arco's interpretation, the *Greenspan* court discussed the plaintiff's lack of knowledge in connection with explaining why "public policy" did not support the trial court's ruling—not res judicata. (*Greenspan, supra,* 191 Cal.App.4th at p. 517; see *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 817 ["As *Greenspan* points out, there are good policy reasons not to force a plaintiff to litigate alter ego status in the underlying action. Nothing in *Greenspan* requires plaintiffs to do so. At most, *Greenspan* states that where a plaintiff reasonably believes an alter ego relationship exists, the complaint 'should probably' include alter ego allegations. 'Should probably' is not mandatory."].) Setting *Greenspan* aside, with respect to res judicata, though it is true that a party's failure to bring a known and existing claim in a prior litigation can have a preclusive effect in a subsequent lawsuit between the same parties (cf. *Allied Fire Protection v. Diede Construction, Inc*. (2005) 127 Cal.App.4th 150, 154), that rule has no application where the parties' first lawsuit has yet to produce a final judgment for res judicata purposes. That is the case here. (See fn. 3, *ante*.)

9

2.      *The Alter Ego Doctrine and the Standard of Review*

"[T]he conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court.  [Citations.]  This is because the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact."  (*Alexander v. Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 46.)  There are two requirements for disregarding the corporate entity under the alter ego doctrine.  First, there must be a sufficient unity of interest and ownership between the corporation and the individual or organization controlling it so that their separate personalities no longer exist.  Second, it must be shown that failure to disregard the corporate form will sanction a fraud, promote injustice, or cause an inequitable result.  (*Webber v. Inland Empire Investments, Inc.* (1999) 74 Cal.App.4th 884, 900 (*Webber*).)  "Both of these requirements must be found to exist before the corporate existence will be disregarded, and since this determination is primarily one for the trial court and is not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence."  (*Alexander v. Abbey of the Chimes,* at p. 47; *NEC Electronics, Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 777.)

" 'In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment.  [Citation.]  All issues of credibility are likewise within the province of the trier of fact.  [Citation.]  "In brief, the appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing."  [Citation.]  All conflicts, therefore, must be resolved in favor of the respondent.  [Citation.]' "  (*In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 (*Marriage of Ananeh-Firempong*).)

### a. *Substantial evidence supports the unity of interest finding*

The unity of interest and ownership requirement encompasses several factors. Among the factors to be considered are one individual's ownership of all stock in a corporation; use of the same office or business location; commingling of funds and other assets of the individual and the corporation; an individual holding out that he is personally liable for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records; disregard of corporate formalities; absence of corporate assets and inadequate capitalization; and the use of a corporation as a mere shell, instrumentality or conduit for the business of an individual. (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811-812 (*Zoran*).) This list of factors is not exhaustive, and these enumerated factors may be considered with others under the particular circumstances of each case. " 'No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine.' " (*Id.* at p. 812.)

D'Arco does not dispute that his debtor examination testimony supports the trial court's findings on several of these factors—namely, that D'Arco sometimes paid Sayrahan's debts, thus appearing to hold himself out as liable for those debts; Sayrahan failed to maintain corporate minutes; Sayrahan used D'Arco's home as its business address; Sayrahan never had any officers or employees; and D'Arco is Sayrahan's sole stock owner. Nevertheless, he contends the evidence does not support a finding on what he characterizes as the two "most crucial" factors—inadequate capitalization and commingling of funds.[5] On this basis, he argues the order must be reversed. We disagree.

---

[5] D'Arco argues that the "minor factors" cited by the trial court cannot, absent evidence of inadequate capitalization and commingling of funds, support application of the alter ego doctrine because none of these factors "caused [Misik] damages or hampered his recovery" from Sayrahan. D'Arco does not cite any direct authority for this no harm, no foul test; nevertheless, it is arguably implicit in the alter ego doctrine's second requirement that there be evidence of injustice or an inequitable result. (See *Webber, supra,* 74 Cal.App.4th at p. 900 ["The doctrine is applicable where some

11

With respect to capitalization, D'Arco testified that immediately after receiving the loans from Misik, Sayrahan had less cash on hand than debts it owed. He also admitted there was never a month after 2007 during which Sayrahan's bank account balance exceeded $3,266.66. D'Arco argues this evidence was insufficient because he presented evidence, through his own declaration, showing that Sayrahan held equity in various parcels of real property worth between $400,000 and $500,000. However, contrary to D'Arco's contention, the value of Sayrahan's property holdings was disputed, and the trial court could reasonably reject D'Arco's equity estimates based on the evidence presented. Among other things, D'Arco testified at the debtor examination that Sayrahan lost all the real property it owned to foreclosure in 2008, not long after receiving the loans from Misik. Further, as Misik pointed out in reply to D'Arco's declaration, apart from his bald assertion, D'Arco failed to provide any evidence in the form of ownership records or appraisal reports to substantiate his equity figures. In determining whether there is sufficient evidence, we view the record most favorably to the prevailing party and accept credibility determinations made by the trial court. (*Marriage of Ananeh-Firempong, supra,* 219 CalApp.3d at p. 278.) The trial court implicitly rejected D'Arco's declaration in finding Sayrahan was inadequately capitalized. That finding was supported by substantial evidence.

---

innocent party attacks the corporate form as an *injury* to that party's interests"], italics added.) We also are mindful of the fact that there are many small businesses incorporated as limited liability companies or other corporate forms in which the sole owner uses his or her home address and telephone number for the business, without keeping corporate minutes, and without any officers, directors or employees. In many of these cases, despite the confluence of several factors, the corporate form will be respected. As we have said, " '[n]o single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine.' " (*Zoran, supra,* 185 Cal.App.4th at p. 812.) Be that as it may, here there was substantial evidence to support findings that Sayrahan was inadequately capitalized and its funds were commingled with D'Arco's.

12

The same is true with respect to the commingling factor. The evidence showed that one of the post-dated checks Misik received as an interest payment for the Sayrahan loans was drawn on D'Arco's personal bank account. D'Arco also testified that he sometimes used his personal account to pay Sayrahan's debts. Viewed in the light most favorable to the trial court's order, this evidence supports a reasonable inference that D'Arco also sometimes deposited funds belonging to Sayrahan in his personal account and, thus, used the account to pay the company's debts. Taken together with D'Arco's admissions on the other unity of interest factors, we conclude the evidence was sufficient to support the trial court's finding.

      b.     *Substantial evidence supports the finding that respecting corporate separateness would produce an inequitable result*

The second requirement for application of the alter ego doctrine is a finding that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 365, fn. 9.) The test for this requirement looks to whether an unjust or inequitable result would follow if the acts in question are treated as those of the corporation alone. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300.)

D'Arco testified that, as of the date of the debtor examination, Sayrahan owned no assets whatsoever. Thus, respecting the fiction of Sayrahan's corporate separateness will prevent Misik from collecting on the judgment, notwithstanding Sayrahan's breach of the promissory notes. While this alone is not sufficient to find inequity, when taken together with the evidence establishing a unity of interest between D'Arco and Sayrahan—in particular the evidence showing Sayrahan was undercapitalized when D'Arco signed the promissory notes—Sayrahan's judgment proof status is sufficient to meet the requirement. (Cf. *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 ["The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form"].)

D'Arco contends the inequitable result requirement has not been met because it cannot be shown that he or Sayrahan "engaged in any fraudulent, bad faith, illegal or unethical activities." As we have discussed, the evidence showing that D'Arco signed the promissory notes at a time when Sayrahan was undercapitalized is sufficient to establish bad faith. Moreover, D'Arco's argument largely repeats a contention that we expressly rejected in *Misik I*—that is, D'Arco argues the second element of alter ego liability cannot be established because he obtained a favorable verdict on the fraud cause of action. As we explained in *Misik I*, " '[a]pplication of the *alter ego* doctrine does not depend upon pleading or proof of fraud.' [Citations.] The doctrine can be invoked when adherence to the fiction of the separate existence of the corporation would promote injustice [Citation] or bring about inequitable results." (*Misik I, supra,* 197 Cal.App.4th at p. 1074.) The trial court found an inequitable result would follow from respecting Sayrahan's corporate separateness. Substantial evidence supports that finding.

Lastly, as noted above, D'Arco appears to argue that Misik should have been equitably estopped from adding him as a judgment debtor because Misik failed to assert alter ego liability prior to entry of judgment. In that regard, D'Arco contends there was substantial evidence showing Misik knew or should have known about D'Arco's relationship with Sayrahan when Misik agreed to make the subject loans. Thus, D'Arco argues the inequitable result finding should not have been made, as it was Misik's own carelessness that "contributed to his debacle." We disagree.

"A trial court's determination on the issue of estoppel is a factual finding which will be upheld if supported by substantial evidence." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850.) By presenting only the evidence supporting his claim of estoppel, D'Arco has, at best, met only half of his burden as appellant. When the sufficiency of evidence is challenged, that burden " 'requires [the appellant] to demonstrate that there is *no* substantial evidence to support the challenged findings.' (Italic added.) [Citations.] A recitation of only [the appellant's] evidence is not the 'demonstration' contemplated under the above rule." (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) When reviewing a finding for substantial evidence, we

ordinarily look only at the evidence supporting the finding, and disregard the contrary showing. (*Marriage of Ananeh-Firempong, supra,* 219 Cal.App.3d at p. 278.)

Misik's declaration in support of the motion to amend the judgment supports the trial court's implicit rejection of D'Arco's estoppel argument. Misik declared that he had not spoken with D'Arco before lending the money; he had never heard of Sayrahan before receiving the first promissory note; and he did not know D'Arco owned Sayrahan.[6] Notwithstanding any conflicting evidence showing Misik was "unreasonably careless" as D'Arco contends, Misik's declaration was sufficient to sustain the trial court's resolution of this factual issue. And, the record as a whole is sufficient to sustain the court's inequitable result finding.

### 3. *D'Arco's Due Process Arguments Do Not Support Reversal*

D'Arco contends the order amending the judgment violated his due process rights because (1) the trial court did not issue a statement of decision; and (2) he was not given adequate notice that he could be held liable as Sayrahan's alter ego. Neither contention has merit.

With respect to the statement of decision, though a statement of decision is required upon proper request after a bench trial on a question of fact (see § 632), "a trial court need not issue a statement of decision after a ruling on a motion." (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 353-354.) The court's order granting Misik's motion to amend the judgment did not require a statement of decision.

As for adequate notice, D'Arco contends his litigation strategy would have been different had he known, prior to the motion to amend the judgment, that he might also have to defend against alter ego allegations. Specifically, D'Arco contends that he would have (1) hired independent counsel for himself; (2) cross-complained against Ballardo and Sayrahan; and (3) opposed the cost motion brought against Sayrahan.

---

[6]     This evidence also is sufficient to reject D'Arco's contention that Misik "ratified" the alter ego relationship.

"Due process 'guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses.' " (*Greenspan, supra,* 191 Cal.App.4th at p. 509.)  As we discussed in *Misik I*, there was substantial evidence of D'Arco's control over Sayrahan's defense, and this evidence was sufficient to support a finding that D'Arco was "virtually represented" as Sayrahan's alter ego in the underlying litigation.  (*Misik I, supra,* 197 Cal.App.4th at p. 1075.)  D'Arco's chosen litigation strategy may have been improvident in light of the order amending the judgment, but this does not amount to a deprivation of due process.

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to plaintiff Thomas Misik.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.